THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER SHELLER, et al.

    Plaintiffs,

v.

JOHN M. WOODS, M.D., et al.

    Defendants.

Civil Action No.: RDB-08-3501

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Jennifer Sheller and John Bealefeld, as parents and next friends of Kirra Faith Bealefeld, have brought the present medical malpractice suit against Defendants John M. Woods, M.D., John M. Woods, M.D., P.A., and the Peninsula Regional Medical Center (collectively, "Defendants"). Plaintiffs claim that Defendants' negligent medical treatment resulted in injury to Sheller and in the premature and wrongful death of her unborn child. On May 27, 2010, subsequent to the completion of discovery and eleven days before the start of trial, Plaintiffs filed the pending Motion in Limine to Exclude Evidence and Argument Regarding Contributory Negligence (Paper No. 55). Having considered the parties' respective arguments, as set forth in their briefs and at a hearing conducted on June 2, 2010, this Court DENIED Plaintiffs' Motion during a telephone conference held on June 4, 2010. This Memorandum Opinion supplements the reasons set forth on the record concerning the denial of Plaintiff's Motion.

## BACKGROUND

At approximately 2:30 a.m., on the morning of February 23, 2008, Plaintiff Jennifer Sheller ("Sheller") presented to the labor and delivery unit of the Peninsula Regional Medical

Center ("PRMC") in Salisbury, Maryland, complaining of contractions and vaginal bleeding. At the time, Sheller was over 38 weeks pregnant and had been scheduled to undergo a repeat caesarian section on March 5, 2008. Before arriving at PRMC, Sheller called her obstetrician, Dr. Bruce Winnacott, and left a message on his answering service. At the time, Dr. Winnacott's patients were being covered by the on-call obstetrician, Defendant Dr. John Woods ("Dr. Woods").

Upon her arrival at PRMC, Sheller was assessed by the labor and delivery nurse, Lauren Clark ("Nurse Clark"), who electronically monitored her fetus, performed several medical tests, and conducted a sterile vaginal examination. Nurse Clark then called Dr. Woods, who was home at the time, and informed him of the interventions she had performed. Over the telephone, Dr. Woods instructed Nurse Clark to discharge Sheller and to inform her to return to the hospital if problem signs arose. Nurse Clark thereupon orally instructed Sheller to return to the hospital if she experienced any changes in condition such as regular contractions or significant bleeding. Sheller departed from PRMC at approximately 4:25 a.m.

After she returned home, Sheller continued to have painful contractions and she noticed increased and darker bleeding. Sheller alleges that she made calls to Dr. Winnacott's answering service at approximately 11:40 a.m. and 12:14 p.m. to complain about continued bleeding and severe pain. (Am. Compl. ¶ 29.)

The hospital's records indicate that Sheller called PRMC at approximately 1:00 p.m. During the call, Sheller spoke with nurse Gina Vincent ("Nurse Vincent"), who advised that Sheller return to the hospital. Pls.' Mot. in Limine at 2. However, Sheller did not arrive at PRMC until approximately 2:35 p.m. At the time of her arrival, the obstetrical nursing staff could not find a fetal heart rate, leading Dr. Woods to perform a fetal sonogram, which revealed

2

that the fetus had died. Pathology determined that the death of the fetus was caused by a placental abruption, which occurs when the placenta detaches from the uterine wall and deprives the fetus of oxygen and blood.

On December 31, 2008, Sheller and Bealefeld filed the present lawsuit seeking damages for injuries sustained by Sheller and for the wrongful death of their unborn child. Plaintiffs allege that these injuries resulted from the negligence of Dr. Woods and Nurse Clark. Defendants, on the other hand, contend that Dr. Woods and Nurse Clark acted reasonably and within the applicable standard of care.

On May 27, 2010, Plaintiffs filed the pending Motion in Limine to Exclude Evidence and Argument Regarding Contributory Negligence (Paper No. 55). Plaintiffs seek to bar Defendants from raising the affirmative defense of contributory negligence and from introducing any related evidence at trial. They argue that Defendants cannot support an argument of contributory negligence because there is no evidence showing that any delay on Sheller's behalf caused or contributed to the fetus' death.

## DISCUSSION

Under Maryland law, contributory negligence results "whenever the injured person acts or fails to act in a manner consistent with the knowledge or appreciation, actual or implied, of the danger or injury that his or her conduct involves." *Faith v. Keefer*, 127 Md. App. 706, 745, 736 A.2d 422 (1999) (quoting *Campbell v. Montgomery County Bd. of Educ.*, 73 Md. App. 54, 64, 533 A.2d 9 (1987)). Stated differently, contributory negligence occurs when an individual does something "a person of ordinary prudence would not do, or fail[s] to do something that a person of ordinary prudence would do under the circumstances." *Keefer*, 127 Md. App. at 745 (internal

3

quotations omitted). Contributory negligence is an affirmative defense, and the defendant bears the burden of proving contributory negligence by a preponderance of the evidence. *Id.* at 746.

A defendant asserting the defense of contributory negligence must satisfy the same elements and burden of proof that attach to an ordinary claim of negligence asserted by a plaintiff. *See Moodie v. Santoni*, 292 Md. 582, 586-87, 551 A.2d 323 (1982). Furthermore, the principles that govern negligence and contributory negligence are fully applicable in medical malpractice cases. *See Sterling v. Johns Hopkins Hosp.*, 145 Md. App. 161, 168, 802 A.2d 440 (2002). Under Maryland law, contributory negligence, if established, presents a complete bar to plaintiff's recovery. *See Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 451, 456 A.2d 894 (1983) (noting that "a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence"). However, "[a] plaintiff's negligence bars recovery only if the negligence was a proximate cause of the injury or accident." *Germain v. Norris*, 536 F. Supp. 2d 585, 590 n.7 (D. Md. 2008).

Plaintiffs' motion in limine raises the question of whether there is sufficient evidence for a jury to determine both that Sheller was negligent in failing to return to the hospital at an earlier time and that her delay was the proximate cause of the alleged injuries.

As an initial matter, this Court finds that there is proffered evidence that could support a jury finding that Sheller was negligent in not returning to the hospital at an earlier time. Proffered evidence indicates that Nurse Clark specifically instructed Sheller to return to the hospital immediately upon experiencing certain symptoms, such as continued contractions and excessive bleeding. In her deposition, Sheller testified that despite experiencing some of these symptoms during the morning hours, she remained at home during this period and did not

4

immediately return to the hospital. In addition, proffered evidence indicates that Sheller was again instructed to return to the hospital in her 1 p.m. telephone conversation with Nurse Vincent, but she failed to appear until ninety-five minutes later. Thus, a jury could determine that Sheller acted negligently in delaying her return to the PRMC and in failing to abide by the express instructions given by Nurses Clark and Vincent.

Nevertheless, Plaintiffs contend that even if Sheller was negligent in failing to return to the hospital, a jury could not properly infer that Sheller's delay caused the alleged injuries. To prove causation in a medical malpractice case, the claimant must establish that but for the negligence of the tort-feasor, the injury would not have occurred. *See Suburban Hosp. Ass'n, Inc. v. Mewhinney*, 230 Md. 480, 484-85, 187 A.2d 671 (1963). Plaintiffs maintain that to establish a jury issue of causation in this case, Defendants must present expert testimony that pinpoints the exact timing of fetal death. This Court finds, however, that Plaintiffs' motion in limine is based upon an overly restrictive interpretation of the evidentiary prerequisites for submission of an issue of contributory negligence to the jury.

Courts applying Maryland law have adopted a permissive approach to this issue, noting that "[m]eager evidence of each of the elements of contributory negligence is sufficient to establish a jury question." *Kassama v. Magat*, 136 Md. App. 637, 658, 767 A.2d 348 (2001); *see also Fowler v. Smith*, 240 Md. 240, 246, 213 A.2d 549 (1965) ("Maryland has gone almost as far as any jurisdiction . . . in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury."). Normally, a judge need only prevent a jury's consideration of negligence claims when they are based on "a mere scintilla of evidence,

amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence." *Fowler*, 240 Md. at 247.

Plaintiffs correctly note that because medical malpractice cases often involve complex matters that "are generally outside the understanding of lay people," courts ordinarily require "expert testimony to establish breach of the standard of care and causation." *Tucker v. Univ. Specialty Hosp.*, 166 Md. App. 50, 58, 887 A.2d 74 (2005) (citing *Meda v. Brown*, 318 Md. 418, 428, 569 A.2d 202 (1990)). Experts assist jurors by explaining complex medical phenomena, and they are afforded generous latitude in developing evidence and drawing inferences. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993).

But while expert testimony plays a critical role in medical malpractice suits, such testimony need not exhaustively address every topic, issue, or circumstance that may arise in a given case. Nor must every ultimate issue of fact in a case be conclusively resolved by an expert's opinion. Indeed, expert testimony may aid the trier of fact by providing useful contextual information, which may be further complemented or particularized by other forms of probative evidence in the record. Thus, it follows that with respect to the element of causation, "expert testimony itself need not establish a probable causal relationship," for:

> The law requires proof of probable, not merely possible, facts, including causal relations . . . . But, sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause.

*Jacobs v. Flynn*, 131 Md. App. 342, 354-55, 749 A.2d 174 (2000) (quoting *Charlton Bros. Transp. Co., Inc. v. Garrettson*, 188 Md. 85, 94, 51 A.2d 642 (1947) (emphasis in original)). In other words, a claimant's "burden of proof will be satisfied by expert testimony 'with respect to causation as to what is possible if, in conjunction with that testimony, there is additional evidence of causation introduced at trial that allows the finder of fact to determine that issue.'"

*Jacobs*, 131 Md. App. at 355 (quoting *Karl v. Davis*, 100 Md. App. 42, 52, 639 A.2d 214 (1994)).

This Court proceeds to assess whether the evidence that will likely be presented at trial could allow a reasonable jury to find that Sheller's alleged negligence was the proximate cause of the death of her fetus. To better resolve this issue of proximate cause, the jury will need to ascertain the approximate timing of the fetus' death, so that it can discern the temporal relationship between Sheller's conduct and the injury. Most of the experts in this case testified that at the time Sheller was discharged from the hospital on the morning of February 23, 2010, her fetus was still alive. In addition, the parties agree that by the time Sheller had returned to PRMC at approximately 2:35 p.m. that same day, her fetus had expired. However, in their depositions, none of the experts offered an opinion as to the precise timing of the fetus' death.

Therefore the question becomes whether there is sufficient proffered evidence—from expert and non-expert sources—that would permit the jury to make an inference concerning the timing of fetal death between 4:30 a.m. and 2:35 p.m. on February 23, 2008. The experts in this case propose to testify about the signs and symptoms of placental abruptions and the manner in which they can lead to fetal death. This expert testimony, in combination with ordinary fact witness testimony concerning the sequence of events that occurred between the time of her initial discharge and her eventual return to the hospital may be legally sufficient to support an inference of when the death occurred. For example, Dr. Blakemore testified in her deposition that she believed that the abruption began when Sheller started to experience heavy bleeding at home. (Blakemore Dep. at 58.) A reasonable jury could properly approximate the timing of fetal death by combining Dr. Blakemore's opinion, Sheller's testimony, and any expert testimony concerning the temporal relationship between abruption and fetal death. *See, e.g., Kassama*, 136

7

Md. App. at 658 ("In order to prove the proximate cause of an injury, a party is permitted to rely on circumstantial evidence. Direct testimony is not essential.") (internal quotation marks omitted); *Western Md. R. Co. v. Shivers*, 101 Md. 391, 393, 61 A. 618 (1905) ("negligence, like any other fact, can be established by the proof of circumstances from which its existence may be inferred"). It appears that in this case the jurors will be able to render a determination on causation by relying upon direct and circumstantial evidence, and without resorting to speculation. Moreover, it appears that the jurors will "not [be] asked to draw an inference unaided by any expert testimony." *Meda v. Brown*, 318 Md. 418, 428, 569 A.2d 202 (1990).

In sum, from the pretrial vantage point, this Court finds that Defendants could present legally sufficient evidence establishing that Sheller's negligence was the proximate cause of the alleged injuries. Accordingly, Defendants are not precluded from introducing evidence and argument at trial relating to the affirmative defense of contributory negligence. However, if it becomes apparent, by the close of evidence at trial, that the evidence proffered does not properly substantiate the issue of contributory negligence, then Plaintiffs may move for this Court to reconsider whether the issue merits consideration by the jury.

## CONCLUSION

For the reasons mentioned above, Plaintiffs' Motion in Limine to Exclude Evidence and Argument Regarding Contributory Negligence (Paper No. 55) is DENIED. A separate Order follows.

Dated: June 8, 2010

/s/_____
Richard D. Bennett
United States District Judge